UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
THOMAS E. MONKS,                    )
                                    )
        Plaintiff,                  )
                                    )   Civil Action No.
    v.                              )   16-12084-FDS
                                    )
ASTORIA BANK, f/k/a ASTORIA         )
FEDERAL SAVINGS AND LOAN            )
ASSOCIATION,                        )
                                    )
        Defendant.                  )
_____ )

## MEMORANDUM AND ORDER ON MOTION TO DISMISS

**SAYLOR, J.**

This is an action for wrongful foreclosure. In 2004, plaintiff Thomas Monks purchased his home by taking out a mortgage loan. Nine years later, he defaulted on the loan payments, after which the defendant mortgagee, Astoria Bank, initiated foreclosure proceedings. The complaint alleges that Astoria provided Monks with an opportunity to apply for a loan modification and assured him that it would not conduct a foreclosure sale during the evaluation period. It further alleges that despite those assurances, Astoria foreclosed on the home in September 2016. The complaint alleges three counts under Massachusetts law for negligent misrepresentation, deceit, and a violation of Mass. Gen. Laws ch. 93A.

Defendant has moved to dismiss the complaint. For the following reasons, the motion will be denied.

**I.   Background**

Unless otherwise noted, the facts are set forth as alleged in the complaint. In order to

provide context, the Court has also taken judicial notice of various filings in the bankruptcy court.[1]

Thomas Monks and his family live in a house located at 34 Perley Street in Lynn, Massachusetts ("the property"). (Am. Compl. ¶ 6). Astoria Bank, formerly known as Astoria Federal Savings and Loan Association, is a federal savings association.[2]

On April 1, 2004, Monks borrowed $184,000 from Astoria Federal Mortgage Corporation to buy the property. (*Id.* ¶ 8). At the time of the loan, Astoria Federal Mortgage Corporation was a subsidiary of Astoria Federal Savings and Loan Association. (*See* Patel Decl. Ex. D). The loan was secured by a mortgage on the property. (Am. Compl. Ex. 9). The mortgage was subsequently assigned to Astoria Federal Savings and Loan Association. (*Id.* ¶¶ 9–11).

Monks has held the same job as an inspector at a machine shop for 42 years. (*Id.* ¶ 6). According to the complaint, around January 2013, he went through a period of financial hardship due to a loss of overtime work and an illness his wife suffered that prevented her from working. (*Id.* ¶ 12). As a result, he fell behind on his mortgage loan payments. (*Id.*).

The complaint alleges that Monks attempted to modify his mortgage loan on multiple occasions. (*Id.* at 14). It alleges that he applied for modifications in 2014, 2015, and 2016, but that Astoria ignored some of his financial documents and denied those applications. (*Id.*).

---

[1] On a motion to dismiss, a court may consider documents attached to or incorporated into the complaint, facts susceptible of judicial notice, concessions in a plaintiff's response to a motion to dismiss, and official public records. *See Newman v. Krintzman,* 723 F.3d 308, 309 (1st. Cir. 2013). In addition, a court may consider all documents whose contents are alleged and the authenticity no party questions as "effectively merge[d] into the pleadings." *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998). Any facts considered by the Court that were not alleged in the complaint fall under one or more of those categories.

[2] Public records indicate that Astoria Bank is a Federal Savings Association. *See National Banks and Federal Savings Associations,* Off. Comptroller of the Currency, (June 5, 2017) https://occ.gov/topics/licensing/national-banks-fed-savings-assoc-lists/index-active-bank-lists.html.

On April 9, 2010, Monks filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of Massachusetts. (*In re Thomas E. Monks*, D. Mass. Bankr. 10-13809, Docket No. 1). During the course of the bankruptcy proceedings, Monks's attorney filed multiple loan-modification applications on his behalf. (Am. Compl. ¶ 15). Those applications were denied, although the reason for the denial is allegedly unclear. (*Id.*). On December 23, 2014, the court granted Monks's motion to convert the bankruptcy to a Chapter 7 proceeding. (*In re Thomas E. Monks*, D. Mass. Bankr. 10-13809, Docket No. 92). Shortly thereafter, he filed a notice of intention stating that he intended to reaffirm the debt in order to retain the property, although he did not subsequently file a reaffirmation agreement. (*Id.* Docket No. 102). On January 30, 2015, the Chapter 7 trustee filed a report of no distribution, stating that there was no property available for distribution beyond that exempted by law, and further stating, "Assets Abandoned (without deducting any secured claims): $ 198,390.23." (*Id.* at Docket Entry on January 30, 2015). That amount is the same as the amount of the secured claim on the property that Monks listed on the Chapter 13 bankruptcy petition. (*Id.* Docket No. 1 at 7). Finally, on April 2, 2015, Monks was granted a discharge. (*Id.* Docket No. 118).

At some point, Monks received a notice that Astoria had scheduled a foreclosure sale for August 29, 2016. (Am. Compl. ¶ 16). In response to that notice, he contacted the Office of the Attorney General of Massachusetts, which, in turn, requested that Astoria postpone the sale and review the matter for a possible loan modification. (*Id.* ¶ 17). According to the complaint, Astoria agreed to postpone the sale and consider Monks for a modification. (*Id.* ¶ 18).

On August 29, 2016, Astoria sent Monks a letter and loan modification application. (*Id.* ¶ 20). The letter stated that "[o]ptions [m]ay [b]e [a]vailable" that would allow him to stay in his home or leave while avoiding foreclosure, including, among other things, modification of the

3

loan terms. (*Id.* Ex. 8). The first step, it stated, was to "provid[e] information and documentation" using the instructions provided on the attached checklist. (*Id.*). It went on to say:

> Once we have received and evaluated your information, we will contact you regarding your options and next steps.
>
> No foreclosure sale will be conducted and you will not lose your home during the evaluation period (or any longer period required for us to review supplemental material you may provide in response to this notice).

(*Id.*). In the following section, it stated that "if a complete [application] is not received at least 38 calendar days before any scheduled foreclosure sale we may not be able to conduct a full review of your mortgage loan file." (*Id.*). Among other things, the document checklist requested that Monks submit three recent personal-bank statements. (Malik Decl. Ex. I).

The complaint alleges that on September 16, 2016, Monks returned a 67-page application package to Astoria by certified mail. (Am. Compl. ¶ 21). As a part of that package, he provided bank statements for the period from July 23–August 18, 2016, and June 22–July 22, 2016, but did not provide a third bank statement. (Malik Decl. Ex. I). Astoria received the package on September 22, 2016, and mailed Monks confirmation of its receipt the following day. (Am. Compl. ¶¶ 22–23; *Id.* Ex. 10). The confirmation stated,

> If we received your application package more than 37 calendar days before a scheduled foreclosure sale we will review your application, and determine if it is complete. You will be provided with an acknowledgement containing our assessment of completion shortly. If your application is complete, or is incomplete but completed within the time frame stated in the acknowledgment we will evaluate you for all available loss mitigation options.

(*Id.*). The letter did not indicate whether the bank considered the loan application to be complete, nor did Monks ever receive an acknowledgement as to Astoria's assessment of completion. (*Id.*)

4

According to the complaint, despite having received the loan-modification application on September 22, Astoria foreclosed on the property on September 28, 2016. (*Id.* ¶ 24). The foreclosure took place 30 days after Astoria initially sent the application. (*Id.*). Monks was notified that the property had sold back to Astoria for the alleged amount of the debt of $221,063.83, and as a result, "there are no surplus funds resulting from the foreclosure sale." (*Id.* Ex. 12).

The complaint alleges that Monks's income has increased and that he now makes sufficient income to afford his mortgage payments. (*Id.* ¶ 13). It further alleges that he relied on Astoria's representation that no foreclosure would occur during the period in which his loan was under review for a modification by foregoing other options to avoid foreclosure, including conducting a short sale, pursuing a transfer by deed in lieu of foreclosure, or filing for bankruptcy. (*Id.* ¶ 22).

On October 18, 2016, Monks brought this action, alleging claims under state law for deceit, negligent misrepresentation, and a violation of Mass. Gen. Laws ch. 93A. It seeks rescission of the foreclosure and monetary damages. On January 18, 2017, he filed an amended complaint. Defendant has moved to dismiss the complaint for a failure to state a claim upon which relief can be granted.

## II. **Standard of Review**

On a motion to dismiss for failure to state a claim made pursuant to Fed. R. Civ. P. 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007). To survive a motion to dismiss, the complaint must state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual

allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

Under Fed. R. Civ. P. 9(b), the standard for allegations of fraud and fraud-based claims is higher than the normal pleading standard. To survive a motion to dismiss, a complaint alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In the First Circuit, to satisfy the requirements of Rule 9(b), plaintiffs must specifically plead "the time, place and content of an alleged false representation." *U.S. ex rel. Heineman-Guta v. Guidant Corp.*, 718 F.3d 28, 34 (1st Cir. 2013); *accord Rodi v. Southern N.E. Sch. of Law*, 389 F.3d 5, 15 (1st Cir. 2004) (stating that Rule 9(b) is satisfied by averment of "the who, what, where, and when of the allegedly false or fraudulent representation"). However, "the specificity requirement extends only to the particulars of the allegedly misleading statement itself. . . . The other elements of fraud, such as intent and knowledge, may be averred in general terms." *Rodi*, 389 F.3d at 15.

### III.  Analysis

#### A.  HOLA Preemption

Astoria contends that Monk's claims must be dismissed because they are preempted by the federal Home Owners' Loan Act ("HOLA"), 12 U.S.C. §§ 1461 *et seq*. Regulations adopted pursuant to HOLA govern mortgage lending by federal savings associations, such as Astoria.

6

*See* 12 C.F.R. §§ 560.1 *et seq.* The regulations provide that they "occup[y] the entire field of lending regulation for federal savings associations," including, for example, requirements as to the "terms of credit" and the "[p]rocessing, origination, [and] servicing . . . of . . . mortgages." *Id.* § 560.2(a–b). The regulations also provide a savings clause, expressly exempting from preemption claims under state tort or contract law "to the extent that [those laws] only incidentally affect the lending operations of Federal savings associations." *Id.* § 560.2(c).

The complaint alleges claims for common-law deceit and negligent misrepresentation, as well as a statutory violation of Mass. Gen. Laws ch. 93A. The Supreme Judicial Court has described Chapter 93A claims as either tort-based, contract-based, or "neither wholly tortious nor wholly contractual in nature," depending on the circumstance. *Kraft Power Corp. v. Merrill*, 464 Mass. 145, 156 (2013) (quoting *Kattar v. Demoulas,* 433 Mass. 1, 12 (2000)). However, where a claim for a violation of Chapter 93A is based on a false representation, such as here, the claim sounds in tort. *See Standard Register Co. v. Bolton-Emerson, Inc.*, 38 Mass. App. Ct. 545, 550 (1995). Astoria contends that the claims here do not fall within the protection of the savings clause for tort claims because they have more than an "incidental" effect on lending.

As described by the comments to the regulations, the purpose of the savings clause is to "preserve the traditional infrastructure of basic state laws that undergird commercial transactions." Lending and Investment, 61 Fed. Reg. 50951, 50966 (Sept. 30, 1996). Although the First Circuit has not addressed the issue, other circuits have found that common-law fraud and fraud-based claims are not preempted by § 560.2. *See McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 558 (4th Cir. 2013) ("Determining that the tort of fraud falls within the scope of § 560.2 would preclude fundamental state regulation of deceptive practices in which unscrupulous savings and loan associations might engage."); *In re Ocwen Loan Servicing, LLC*

7

*Mortg. Servicing Litig.*, 491 F.3d 638, 643 (7th Cir. 2007). The Seventh Circuit has stated that HOLA does not offer a mechanism, either through an administrative proceeding or private right of action, to "provide a remedy to persons injured by wrongful acts of savings and loan associations." *In re Ocwen*, 491 F.3d at 643. Therefore, common-law tort claims that provide such a remedy are expressly preserved by the savings clause. *See id.*

Similarly, the Sixth Circuit has found that laws prohibiting unfair and deceptive practices have only an incidental effect on lending, because such laws "merely seek to make defendants live up to the word of their agreements they sign with their customers." *Molosky v. Washington Mut., Inc.*, 664 F.3d 109, 116 (6th Cir. 2011) (quoting *McAnaney v. Astoria Fin. Corp.,* 665 F.Supp.2d 132, 164 (E.D.N.Y. 2009)) (alterations omitted). That finding is supported by guidance from the implementing agency, which provides that "because federal thrifts are presumed to interact with their borrowers in a truthful manner" a law that generally prohibits deception "should have no measurable impact on their lending operations." Preemption of State Laws Applicable to Credit Card Transactions, OTS Op. Letter, 1996 WL 767462, at *6 (Dec. 24, 1996).

Although the claims here arise out of a loan-modification application, the complaint does not allege that Astoria was under any obligation to grant Monks a modification, or that it was even required to offer him the opportunity to apply for one. Instead, the gravamen of the complaint is that Monks was falsely assured that no foreclosure would occur during the evaluation period, and that he relied on those assurances to his detriment. *See Dixon v. Wells Fargo Bank, N.A.*, 798 F. Supp. 2d 336, 357 (D. Mass. 2011).

While in some cases, "common law can be used to regulate federal savings associations as surely as statutes," plaintiff's claims do not extend that far. *Molosky*, 664 F.3d at 115. *Cf.*

8

*Barzelis v. Flagstar Bank, F.S.B.*, 784 F.3d 971, 976 (5th Cir. 2015) (finding that a negligent misrepresentation claim based "on the inadequacy of disclosures or credit notices . . . has a specific regulatory effect on lending operations and is preempted"). Rather than challenge Astoria's modification practices or notification procedures generally, the claims here "rel[y] on the general duty not to misrepresent material facts." *DeLeon v. Wells Fargo*, 2011 WL 311376, at *6 (Jan. 28, 2011). Those claims cannot have more than an incidental impact on lending, because they impose liability only if a lender made an affirmative false representation. Such claims comes squarely within the savings clause under § 560.2(c). *See In re Ocwen,* 491 F.3d at 643 (finding that "if the mortgagee . . . fraudulently represents to the mortgagor that it will forgive a default, and then forecloses, it would be surprising for a federal regulation to bar a suit for fraud").

## B. Deceit

### 1. Elements

To prove a claim for deceit under Massachusetts law, a plaintiff must show that the defendant "made a false representation of material fact; for the purpose of inducing reliance; and that plaintiff relied upon the representation to his or her detriment." *Cummings v. HPG Int'l, Inc.*, 244 F.3d 16, 22 (1st Cir. 2001). Although a claim for deceit is characterized as an intentional tort, "[p]roof of intent to deceive is not required, so long as there is proof of a false representation of fact susceptible of the speaker's knowledge." *Id.* Furthermore, a defendant "may be liable for deceit if he implicitly conveyed that he had knowledge of the represented fact." *Id.* at 23.

### 2. False Information

To prove a claim for deceit, a plaintiff must first show that a false statement was made.

9

A false representation can be made either through explicit statements or through conduct. *See Robichaud v. Owens-Illinois Glass Co.*, 313 Mass. 583, 585 (1943).

On August 29, 2016, Astoria sent Monks a letter offering him the opportunity to apply for a loan modification. The letter provided that "[n]o foreclosure sale will be conducted and you will not lose your home during the evaluation period (or any longer period required for us to review supplemental material you may provide in response to this notice)." The letter did not define "evaluation period." Monks alleges that he submitted a loan-modification application that was received by Astoria on September 22, 2016, and that despite its assurances, the bank foreclosed on the property six days later, on September 28.

Astoria contends that the letter does not contain a false representation, because the "evaluation period" never commenced. It contends that the letter required Monks to submit a complete package promptly, and therefore the "evaluation period" would not commence until such a complete package was submitted. According to Astoria, Monks's application package was incomplete; apparently, among other things, he submitted bank statements for two months rather than three.

At this stage of the proceedings, the Court need not determine the exact meaning of the term "evaluation period." *See Dill v. Am. Home Mortg. Servicing, Inc.*, 935 F. Supp. 2d 299, 304 n.35 (D. Mass. 2013) (finding, on a motion to dismiss, that where a misrepresentation claim hinges on the definition of certain terms, resolution of the definition of those terms "is better determined at a later stage of [the] proceeding with reference to more materials on the record"). The allegations in the complaint are sufficient to state a plausible claim that, in context, the "evaluation period" began either when Astoria received a complete application or a reasonably

complete application.[3]

Furthermore, the complaint states at least a plausible claim that Astoria had a present intention, at the time it sent the letter, to foreclose during the evaluation period. *See Starr v. Fordham*, 420 Mass. 178, 187 (1995). Therefore, the complaint states a plausible claim that defendant "made a false representation of material fact." *Cummings*, 244 F.3d at 22. Whether Astoria actually had the requisite intent is not, of course, a question that cannot be resolved on the pleadings.

An additional statement in the letter warrants discussion. Astoria contends that the assurance was not false because it was qualified by a later provision that states as follows:

> Remember, you need to take action by completing and returning the entire [application] promptly. Please note, if a complete [application] is not received at least 38 calendar days before any scheduled foreclosure sale we may not be able to conduct a full review of your mortgage loan file.

In this context, at least, the relevance of that provision is unclear. Of course, Monks could not have submitted a complete application more than 38 days prior to a scheduled foreclosure, because Astoria conducted the foreclosure sale only 30 days after sending the letter. In any event, the statement is not sufficient to negate the plausible allegation that the letter falsely represented that no foreclosure sale would occur during "the evaluation period."

### 3. "Reasonable" and "Detrimental" Reliance

To state a claim for deceit, the complaint must allege that the plaintiff's reliance on the false representation was both reasonable and detrimental. *See Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 438 Mass. 459, 467 (2003). The reasonableness of the plaintiff's reliance

---

[3] The letter also contained language stating that Astoria would not foreclose during "any longer period required . . . to review supplemental material," which arguably could be interpreted to suggest that the bank would accept applications that required some degree of supplementation.

is ordinarily a question for the jury, to be decided under the circumstances of the specific case. *See Sheffer v. Rudnick*, 291 Mass. 205, 210–11 (1935).

The complaint alleges that Monks reasonably relied on the assurance that Astoria would not foreclose on the property during the evaluation period by foregoing other options to avoid foreclosure, including filing for bankruptcy, conducting a short sale, or seeking a transfer by deed in lieu of foreclosure. There are certainly substantial doubts as to whether it was reasonable for Monks to believe that he could pursue any of those options, given that he had recently been granted a discharge in bankruptcy and had not paid his mortgage for some number of years. However, in light of the essentially fact-bound nature of the reasonableness inquiry, it would not be prudent at this stage of the proceeding to find that his alleged reliance was unreasonable as a matter of law. As pleaded, the complaint is sufficient to allege a plausible claim for reliance and detriment. *See Hannigan v. Bank of Am., N.A.*, 48 F. Supp. 3d 135, 141 (D. Mass. 2014) (finding that plaintiffs' claim that they "forewent other options to save their home" stated a cognizable claim for pecuniary damages).[4]

Accordingly, the complaint alleges a plausible claim for deceit.

### C. Negligent Misrepresentation

Under Massachusetts law, claims for misrepresentation and deceit are sufficiently closely related that the "borderline between what is an action for deceit and what is an action for negligent misrepresentation is unclear." *Cummings*, 244 F.3d at 22. To prove a claim for negligent misrepresentation, a plaintiff must show that the defendant "(1) in the course of its business, (2) supplied false information for the guidance of others (3) in their business

---

[4] Astoria has also moved to dismiss under Fed. R. Civ. P. 12(b)(1) on the ground that the Court lacks subject–matter jurisdiction because Monks does not have standing to bring the claims in the complaint. For the same reason that a cognizable claim for detrimental reliance has been alleged, the complaint has plausibly alleged injury sufficient to provide standing.

transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information." *First Marblehead Corp. v. House*, 473 F.3d 1, 9 (1st Cir. 2006) (quoting *Nota Constr. Corp. v. Keyes Assocs.,* 45 Mass. App. Ct. 15, 19–20 (1998)) (alterations omitted).

There is at least some doubt that Astoria provided the information here "for the guidance of others in their business transactions." However, as defendant has not put forth any argument that the claim should be dismissed on those grounds and in light of the above analysis concerning the deceit claim, the motion to dismiss the negligent misrepresentation claim will be denied.

### D. Mass. Gen. Laws Ch. 93A

Mass. Gen. Laws ch. 93A makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. To trigger liability under Chapter 93A, the conduct in question must fall within "the penumbra of some common-law, statutory, or other established concept of unfairness or be immoral, unethical, oppressive or unscrupulous." *Commercial Union Ins. Co. v. Seven Provinces Ins. Co.,* 217 F.3d 33, 40 (1st Cir. 2000) (quoting *Cambridge Plating Co. v. Napco, Inc.,* 85 F.3d 752, 769 (1st Cir. 1996)) (quotations and alterations omitted). Massachusetts courts have held that "negligent misrepresentation of fact the truth of which is reasonably capable of ascertainment is an unfair and deceptive act or practice." *Golber v. BayBank Valley Trust Co.*, 46 Mass. App. Ct. 256, 261 (1999).

For the same reasons that the complaint states a plausible claim for deceit and negligent misrepresentation, it likewise states a plausible claim for unfair and deceptive practices in violation of chapter 93A.

## IV.  Conclusion

For the foregoing reasons, defendant's motion to dismiss is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: June 5, 2017          United States District Judge